Filed 10/23/14  P. v. Rodriguez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Yolo)

---

| | |
|---|---|
| THE PEOPLE, | C072461 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF120692) |
| v. | |
| RICHARD CAMACHO RODRIGUEZ, | |
| Defendant and Appellant. | |

Quite early one spring morning, Lauren McNeil saw defendant Richard Camacho Rodriguez leaving the storage room in her carport.  Officers arrested defendant as he fled on a bicycle stolen from a nearby home.  A jury found defendant guilty of burglary and receiving stolen property.  Sentenced to 38 years to life in prison, defendant appeals, contending (1) insufficient evidence supports his burglary conviction, (2) the addition of the stolen property count constituted vindictive prosecution, (3) the court erred in not severing the two counts, (4) instructional error, (5) the court erred in denying a mistrial based on the jury's seeing defendant in restraints, (6) the court violated defendant's constitutional rights in requiring him to testify regarding sentencing, (7) sentencing error,

(8) the court erred in denying defendant's motion for a new trial based on ineffective assistance of counsel, (9) prosecutorial misconduct, and (10) defendant should receive the benefit of a legislative amendment to the three strikes law. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKROUND

Around 1:30 a.m. on May 1, 2011, Lauren McNeil was working at her residence. She heard the door to the storage room in her carport open. The door stuck and "vibrate[d] the house" when opened and had to be pushed hard to open.

McNeil went downstairs to turn on the carport lights. As she looked out the window, she saw a figure exit the storage room. The storage room light was on; it had been off when she went to bed. The person walked toward McNeil, who saw him for about five seconds before she hid behind the door. McNeil was 13 to 15 feet away.

McNeil pounded on her front door to frighten the intruder and called 911. He ran away. McNeil described him to the 911 dispatcher as of average height, Latino, and wearing a "big red hoodie" jacket. McNeil could not remember if he had any facial hair. At trial, McNeil described the jacket as "loose and long."

Police Officer Kimberly Walker, responding to the 911 call, saw an individual matching the description McNeil gave riding a bicycle across the street from the house. Walker said "Stop. Police" and made eye contact with defendant. Defendant began to pedal faster, away from Walker. Walker called for assistance and pursued him.

A second officer spotted defendant a short distance away. Defendant failed to comply with the officer's demand that he stop. The officer grabbed defendant, who asked, " 'What did I do?' " Defendant was wearing a "puffy 49er jacket." The bicycle defendant was riding had been stolen from the fenced yard of a house less than a quarter of a mile away.

Shortly after defendant's arrest, McNeil identified him as the intruder. The storage room defendant came out of contained bicycles, sporting equipment, and tools. McNeil did not know if anything had been taken from the storage room.

2

Officers were not able to process fingerprints lifted from the storage room. When he was arrested, defendant did not have gloves or tools that might assist in a burglary.

An information charged defendant with burglary and receipt of stolen property. (Pen. Code, §§ 459, 496, subd. (a).)[1] The information also alleged an enhancement for another person being present in a residence during a burglary and enhancements for five prior convictions, two of them serious felonies and five of them within five years of a prior prison term. (§§ 667.5, subd. (c)(21), 667, subd. (a)(1), (d) & (e), 1192.7, subd. (c), 667.5, subd. (b).)

A jury found defendant guilty of both counts and found true the enhancements for another person being present during the burglary. The trial court found the prior conviction enhancements true.

The trial court sentenced defendant to 38 years to life in prison: 25 years to life for burglary, 5 years each for the two serious felony enhancements, and one year each for three of the prior prison term enhancements. A concurrent term of 25 years to life was imposed for receipt of stolen property, and stayed terms were imposed on two of the prior prison term enhancements. Defendant filed a timely notice of appeal.

## DISCUSSION

### Sufficiency of the Evidence

Defendant begins by challenging the sufficiency of the evidence in support of his burglary conviction. Specifically, defendant argues there is insufficient evidence of his intent to commit theft at the time he entered the storage room.

In reviewing a defendant's challenge to the sufficiency of the evidence, we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence. Substantial evidence is evidence that is credible,

---

[1] All further statutory references are to the Penal Code unless otherwise designated.

3

reasonable, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

We do not reassess the credibility of witnesses and we draw all inferences from the evidence that supports the jury's verdict. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.) Unless it is physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Under section 459 burglary requires an unlawful entry with the specific intent to commit a felony. However, a defendant may be guilty of burglary regardless of whether any felony or theft is actually committed, or the crime actually committed is different from that originally contemplated. The carrying away of stolen property is not an element of burglary. (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041-1042.) Burglary requires entry with the proscribed intent; such entry constitutes the completed crime of burglary regardless of whether any felony or theft is actually committed. (*People v. Allen* (1999) 21 Cal.4th 846, 863, fn. 18.)

The intent required for burglary may be inferred from facts and circumstances. (*In re Leanna W.* (2004) 120 Cal.App.4th 735, 741; *People v. Moody* (1976) 59 Cal.App.3d 357, 363.) The mere possession of stolen property will not alone support a conviction for theft of property; however, the possession of recently stolen property is so incriminating that only slight additional evidence is necessary to sustain a burglary conviction. The jury determines, in light of all the evidence, whether or not such an inference should be drawn. (*People v. McFarland* (1962) 58 Cal.2d 748, 754-755.)

Similarly, intent to burglarize can be shown by evidence of unlawful entry, flight from the scene, and failure to provide a plausible reason for being on the premises. Even if no crime is committed after entry, flight and the lack of an explanation for being on the premises provide sufficient evidence for the jury to convict a defendant of burglary. (*People v. Martin* (1969) 275 Cal.App.2d 334, 339.)

4

Defendant argues insufficient evidence supports the jury's finding that he intended to commit theft when he entered the storage room. According to defendant, the People relied on his possession of the stolen bicycle to demonstrate the requisite intent. Defendant contends that in order to prove intent, the uncharged misconduct must be sufficiently similar to the charged offense to support the inference that defendant acted with the same intent in each instance. (*People v. Kelly* (2007) 42 Cal.4th 763, 783.) However, "[i]nasmuch as [defendant] was not charged or convicted of the theft of the bicycle that he possessed, there is too much dissimilarity to infer that he had entered the storage room for the purpose of stealing a bicycle." In support, defendant cites numerous cases in which the court admitted evidence of actual prior burglaries to establish intent in a pending charged burglary.

We disagree with defendant's analysis of the two crimes. To be admissible to prove intent, the two charges must be sufficiently similar to support the inference that defendant possessed the same intent in carrying out each crime. (*People v. Scott* (2011) 52 Cal.4th 452, 471-472 (*Scott*).) The least degree of similarity is required to prove intent. A higher degree of similarity is required to prove common plan and the highest to prove identity. (*People v. Soper* (2009) 45 Cal.4th 759, 776; *People v. Ewoldt* (1994) 7 Cal.4th 380, 402-403 (*Ewoldt*).) However, despite defendant's argument to the contrary, there is no requirement that the two charges be the same.

Here, the trial court found that the jury could make the logical inference that defendant harbored the same criminal intent in entering the storage room and when he came into possession of the bicycle. The court also rejected a requested defense instruction because it would have prevented the jury "from making what could be a logical conclusion that the defendant had the intent at the time the bicycle was taken or came into his possession, and he had that same intent at the time he was inside the storage room at the McNeil residence."

5

We agree that the crimes were sufficiently similar to allow admission of the stolen bicycle to prove defendant's intent on entering McNeil's storage room. Defendant, early one morning, entered the McNeils' storage room and turned on the light. When confronted by McNeil, defendant fled. He initially evaded police but was subsequently apprehended. When police arrested him, he was riding a bicycle stolen that night from the courtyard of a nearby house. Both crimes occurred on the same evening, in the same neighborhood, and involved entering an unoccupied area adjacent to a residence. The bike was stolen from a fenced courtyard; defendant entered the storage room in a carport. The jury had before it sufficient evidence to support defendant's burglary conviction.

### Vindictive Prosecution

Defendant argues he was the victim of vindictive prosecution when the prosecution added the receipt of stolen property charge after the initial jury was unable to reach a verdict on the burglary count. According to defendant, the prosecution was aware prior to the first trial that evidence of the receipt of stolen property charge had been excluded and should have refiled the charges before proceeding to the first trial.

*Background*

The jury in the initial trial was unable to reach a verdict, resulting in a mistrial. The prosecution moved to dismiss the complaint and refile it with the addition of the possession of stolen property charge. Prior to his retrial, defendant brought a motion to dismiss for vindictive prosecution. Defendant noted he was originally charged with only burglary. However, the bicycle offense was mentioned during in limine motions, when the trial court denied the prosecution's request to introduce evidence that defendant was riding a stolen bicycle when arrested for the burglary.

In his motion to dismiss, defendant argued the prosecution did not rebut the presumption of vindictiveness by showing that " '(1) the increase in charge was justified by some objective change in circumstances or in the state of the evidence which legitimately influenced the charging process and (2) that the new information could not

6

reasonably have been discovered at the time the prosecution exercised its discretion to bring the original charge.' " (Citing *In re Bower* (1985) 38 Cal.3d 865, 879 (*Bower*).)

In response, the prosecution claimed that at the time of the preliminary hearing on the original information, a receipt of stolen property count was not included because the victim of the bicycle theft could not be contacted and the officer involved was unavailable. Since defendant faced a life term on the burglary count, the prosecution decided not to attempt to continue the preliminary hearing and to proceed on the burglary count alone. After the jury failed to reach a verdict in the initial trial, the People decided to proceed on all possible charges in the second trial.

The trial court heard argument on the motion. Defendant claimed the prosecution knew of the stolen bicycle three to four months prior to his original trial. According to defendant, once the prosecution realized the stolen bicycle evidence could not be used in the first trial, the complaint should have been dismissed then and refiled with the additional charge before jeopardy attached.

Although the trial court found a presumption of prosecutorial vindictiveness stemming from the filing of an additional charge, the court determined the prosecution had rebutted the presumption. The court cited the prosecution's declaration, which stated "that the information was not known to the People earlier in the stage, which she recounts in detail that when the case was originally assigned to her, the Davis Police Department report regarding the bike then was not part of the case or the case as it was submitted to the DA's office for filing, that it was submitted under a different case number from the burglary, when it came to the DA's office from the Davis Police Department.

"That prior to the preliminary hearing the assigned prosecutor was told that the report existed and informed defense counsel that there was information that Mr. Rodriguez may have stolen a bike earlier.

"[A]t the time of the preliminary hearing there was a request by the defense, and the preliminary hearing went forward, that the assigned prosecutor was unable to contact

7

the victim of the bike theft, although that was attempted over a two week period, that the officer who could have testified at the preliminary hearing was not available on the date set for the preliminary hearing, and so the case proceeded.

"So I think that the People have shown that, in fact, the new charge was not motivated by vindictiveness, so I'm going to deny the motion."

*Discussion*

Defendant contends there was no objective change in circumstances or in the state of the evidence between the first and second trials that could have influenced the charging process. Therefore, the prosecution cannot rebut the presumption of vindictive prosecution.

The prosecution may not punish a defendant for exercising his or her constitutional rights by increasing the charges against that person. Such prosecutorial retaliation constitutes vindictive prosecution. (*United States v. Goodwin* (1982) 457 U.S. 368, 372-373 [73 L.Ed.2d 74].) If a defendant is charged with a more severe crime after moving for a mistrial, these circumstances present a reasonable likelihood of vindictiveness. (*Bower*, *supra*, 38 Cal.3d at p. 877.) "The prosecution has an obvious institutional interest in avoiding the duplication of effort and increased expenditure of resources attendant on the retrial of such a case. The presumption of vindictiveness protects against the danger that such institutional pressures might subconsciously motivate a vindictive prosecutorial response to a defendant's motion for mistrial made at this late stage of the proceedings. [Citations.] The presumption also aims to free the defendant of the apprehension that the exercise of a right designed to guarantee that his or her trial is fair will be met with a retaliatory increase in the charge and potential period of incarceration to which he or she is subjected." (*Id*. at pp. 877-878.)

If the defendant provides facts sufficient to give rise to a presumption of vindictiveness, the burden shifts to the People to rebut the presumption. A prosecutor's declaration that a reassessment of the evidence motivated the charges, not any desire to

8

punish the defendant's exercise of a protected right, will not suffice. Instead, the People must demonstrate (1) an objective change in circumstances or in the state of the evidence that justifies the increased charges, and (2) that the new information could not reasonably have been discovered at the time the prosecutor filed the original charges. (*Bower*, *supra*, 38 Cal.3d at p. 879.) The trial court considers the prosecution's explanation in light of the totality of the circumstances in determining whether the presumption has been rebutted. "The prosecution should be required to show that facts that would legitimately influence the charging process were not available when it exercised its discretion to bring the original charges." (*Twiggs v. Superior Court* (1983) 34 Cal.3d 360, 374.)

Here, the prosecution provided a full explanation for the failure to add the receipt of stolen property count. At the time of the original filing, the report of the bicycle theft was not included in the information provided to the district attorney's office. When the incident was submitted, it had a case number different from that for the burglary. After learning of the bicycle theft, the prosecution was unable to contact the victim and the arresting officer was unavailable. At the time of the preliminary hearing, the prosecution decided not to continue the hearing since defendant faced a possible life term for burglary.

The bicycle theft charge became an issue when, during motions in limine, the trial court ruled the prosecution would not be able to use the bicycle theft charge in the trial on the burglary charge. The first trial ended in a hung jury. Following the mistrial, the prosecution, faced with the exclusion of the bicycle theft evidence, decided to add the bicycle theft charge. The arresting officer was available for the preliminary hearing and the victim was available for trial.

The trial court found the prosecution's explanation sufficiently rebutted the presumption of vindictiveness. We agree. The prosecution explained it was a change in circumstances and not a desire to inflict additional punishment on defendant following the mistrial that spurred the addition of the bicycle theft charge. At the time the original

9

charges were filed, the prosecution was unaware of the bicycle theft. When the prosecution became aware, the arresting officer was not available and the victim could not be reached. Although the prosecution could have continued the preliminary hearing, the prosecution explained that defendant already faced a life term for the burglary. Once the prosecution learned the bicycle theft charge could not be used at trial and the first trial ended in a mistrial, the prosecution added the bicycle theft charge.

Defendant argues the prosecution was aware prior to the first trial that the bicycle evidence would be excluded and "as such should have refiled the charges before proceeding to the first trial." However, the question is whether the prosecution successfully rebutted the presumption of vindictiveness, not whether the prosecution should have refiled the charges once it became aware of the bicycle incident. The explanation provided by the prosecution supports the trial court's finding that the addition of the bicycle theft charge "was not motivated by vindictiveness."

## Motion to Sever Counts

Defendant argues the trial court erred in denying his motion to sever the burglary count from the receipt of stolen property count. Under defendant's reasoning, the two counts were tried together "for the express purpose of reliance on the spill-over effect of the stronger case with the weaker case."

### *Background*

Prior to trial, defendant moved to sever the burglary count from the receipt of stolen property count. Defendant argued the offenses are not cross-admissible and that the burglary evidence was both weaker and more inflammatory than that surrounding the stolen property charge.

Defense counsel reiterated this contention at trial during oral argument. The court asked defense counsel whether he conceded that both burglary and possession of stolen property "are crimes of the same class." Defense counsel agreed but argued that joining the two counts would lessen the prosecution's burden of proof.

10

The trial court concluded: "I don't find that bifurcation is necessary in this case. There's nothing particularly inflammatory about either of these two charges. I suppose a residential burglary is more serious in that sense, slightly more prejudicial than possession of a stolen bicycle, but those observations don't justify severance.

"I would also note that possession of recently stolen property -- and I understand the bicycle was recently stolen in comparison to the alleged burglary -- is evidence that could be used by the jury to determine that the defendant had the requisite specific intent for a burglary charge. And, in fact, the CALCRIM instruction on that issue is Instruction 376. So to that extent, the evidence about the stolen bicycle is cross-admissible in a trial concerning the alleged burglary, so I don't find any basis for severance of the two counts. I would deny the request to sever."

### Discussion

The party requesting severance of joined offenses bears the burden of establishing that there is a substantial danger of prejudice which requires that the charges be separately tried. The determination of prejudice depends on the circumstances of each case. (*People v. Burnell* (2005) 132 Cal.App.4th 938, 946; *People v. Bradford* (1997) 15 Cal.4th 1229, 1315.) However, certain criteria have emerged to guide the court in considering severance motions. Refusal to sever may be an abuse of discretion where (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charged offenses are unusually likely to inflame the jury; (3) a weaker case has been joined to a stronger case, so that the spillover effect of aggregate evidence on several charges might alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder turns the matter into a capital case. (*Ibid.*)

To establish an abuse of discretion on the part of the trial court, a defendant must show the decision falls outside the bounds of reason. The Supreme Court has stated: " '[I]f evidence underlying the offenses in question would be "cross-admissible" in

11

separate trials of other charges, that circumstance normally is sufficient, standing alone, to dispel any prejudice and justify a trial court's refusal to sever the charged offenses. [Citations.]  Our cases, however, make it clear that complete . . . cross-admissibility is not required.  In other words, it may be sufficient, for example, if evidence underlying charge "B" is admissible in the trial of charge "A"–even though evidence underlying charge "A" may not be similarly admissible in the trial of charge "B."  [Citations.]'  [Citation.]" (*People v. Hartsch* (2010) 49 Cal.4th 472, 493.)

Defendant contends the "evidence regarding these two separate incidents was not sufficiently similar to support an inference of intent, motive, or any other fact in issue that would render the evidence cross-admissible."  In addition, defendant argues, the joinder of the weaker burglary case, in which no property was taken, was influenced by the possession of stolen property allegation.  We disagree on both counts.

Other-acts evidence is relevant where the other acts and the charged offense are sufficiently similar.  (*Ewoldt*, *supra*, 7 Cal.4th at pp. 402-403.)  The degree of similarity required for cross-admissibility ranges along a continuum and depends upon the purpose the evidence is to serve.  As noted above, the least degree of similarity is required to prove intent, a higher degree is required to prove common plan, and the highest to prove identity.  (*Scott*, *supra*, 52 Cal.4th at p. 470.)

In the present case, as we noted, both the burglary and the possession of stolen property share significant similarities.  Each crime occurred on the same evening and in the same neighborhood.  During the burglary, defendant entered a storage area located in the carport.  The bicycle was stolen from an enclosed courtyard of a nearby house.  The court's finding that the evidence was cross-admissible was correct.

Nor did the trial court abuse its discretion in finding neither charge particularly inflammatory.  Both crimes were similar; neither was particularly likely to stir the jury's passions against defendant.  Nor is this a case in which a relatively weak case is joined to a stronger case.  The court ruled the evidence of the stolen bicycle was admissible to

12

show defendant's intent on the burglary charge. Defendant attempts to cast doubt on McNeil's identification of him following the burglary. However, our review of the record reveals McNeil saw defendant from about 15 feet away for several seconds and identified defendant as the perpetrator, both on the night of the incident and at trial. The trial court did not err in refusing to sever the two counts.

**Instructional Error**

*Definition of Functionally Connected*

Defendant faults the trial court's instruction defining "functionally connected" in connection with the storage area in McNeil's residence. The instruction given, defendant contends, "allowed the jury to conclude that the storage area in the instant case was functionally connected to the McNeil's [*sic*] house without making an assessment of the evidence before them on that issue, thus removing a key factual determination from the province of the jury."

**Background**

The court initially instructed the jury on first degree burglary. The instruction defined burglary as entry into an inhabited dwelling, which was defined to include "any structure, garage, office, or storeroom that is attached to the house and functionally connected with it."

During deliberations, the jury sent a note to the court asking: "What is the definition of 'functionally connected' with regards to 1st degree burglary? [¶] Is the storage room considered 'functionally connected' to the main house in this case specifically."

In response, the trial court proposed to instruct: " 'As used in Instruction 1701 . . . the term "functionally connected" to a residence means, quote, "used in a related or complimentary [*sic*] way." Entry into such a structure may qualify as a first-degree burglary even if there is no connecting door to the residence and the structure serves as a storehouse, workshop, or office, or serves some other need of the residence.' "

13

Defense counsel objected to the second sentence of the proposed instruction, arguing, "[i]t's taking a question of fact away from the jurors and telling them right now that the storage closet is functionally connected, and any entry into that storage closet with specific intent is burglary. And in that context, I believe that would be a direct[ed] verdict to the jury."

The trial court noted the language of the instruction came from *People v. Rodriguez* (2000) 77 Cal.App.4th 1101, 1112 and stated: "My view is that quoting only the definition of 'functionally connected' that we see in the Rodriguez case doesn't help. Unless you give some examples, there's no way for the jury to really determine what the concept of functionality is as it relates to the analysis of whether a structure qualifies as a first-degree burglary or not. I chose to quote from . . . Rodriguez because it does give you some idea what they're talking about and because it actually didn't use any of the terminology that has been referenced during the course of this trial.

"Furthermore, I simply said that entry into a functionally connected structure may qualify as a first-degree burglary. I certainly didn't say that it would qualify as a first-degree burglary. That is something within the jury's province."

**Discussion**

Defendant contends the court's instruction on "functionally connected" allowed the jury to conclude the storage area in question was functionally interconnected to McNeil's house without assessing the evidence before it and in so doing removed a key factual determination from the jury.

In instructing the jury, the trial court must instruct on the applicable law, including the meaning of technical terms employed in the crime charged. However, whether the evidence meets the given definition is a question for the jury to decide. (*People v. Figueroa* (1986) 41 Cal.3d 714, 726.) We assess the jury instructions as a whole to determine whether there is a reasonable likelihood the jury applied the instruction in a way that violated the defendant's constitutional rights. (*People v. Campos* (2007)

14

156 Cal.App.4th 1228, 1237.)  We review the instructions de novo.  (*People v. Hamilton* (2009) 45 Cal.4th 863, 948.)

After the jury requested further guidance on the phrase "functionally connected," the trial court instructed that the area in question must be "functionally related to and immediately contiguous to a dwelling" but did not have to have a "connecting door to the residence."  In addition, the court told the jury the structure could serve as a "storehouse, workshop, or office or serve[] some other need of the residents."

Defendant argues that "[w]hether or not a structure is functionally connected depends on a number of factors and not just the physical proximity to the house," and the "actual use of the area, was the determinative factor for the jury to determine whether it was functionally connected, rather than its proximity to the house."  However, the trial court did not limit the jury's inquiry to whether or not McNeil's storage area was near the house.  The court informed the jury that to be functionally connected the area must be "immediately contiguous," but it also had to be "functionally related to" a dwelling.  The area need not have a connecting door.  In addition, the court provided several examples of functionally related areas that served the needs of the residents.  These instructions provided a framework for the jury to consider the evidence before it; they did not preordain a result.

Similar instructions were found sufficient in *People v. Thorn* (2009) 176 Cal.App.4th 255.  In *Thorn*, the defendant was convicted of burglary involving a carport.  The trial court had instructed that a " 'carport that is attached to an inhabited dwelling house is part of the inhabited dwelling house.' "  (*Id*. at p. 266.)  The defendant argued the instruction removed essential questions from the jury.  The appellate court rejected this argument, finding the jury was still required to find all the elements of the offense, including whether the carport was attached to the structure.  (*Id*. at pp. 267-268.)  In *People v. Fox* (1997) 58 Cal.App.4th 1041, the defendant was convicted of burglary after entering an attached garage with no internal access to the house.  (*Id*. at p. 1044.)

15

The court instructed that if " 'a garage is attached to an inhabited dwelling house and is, therefore, not a separate structure, it is considered to be a part of the inhabited structure.' " (*Id*. at p. 1045.) The defendant challenged the instruction as usurping the jury's fact-finding function. (*Ibid*.) The appellate court disagreed, finding the jury was still required to find the material issues of fact, namely whether the defendant entered the garage and whether that garage was attached to an inhabited structure. (*Id*. at p. 1047.)

The instructions in the present case did not prevent the jury from considering the evidence before it to determine whether McNeil's storage room was functionally connected to her residence. We find no error.

### *Defendant's Requested Modification to Intent Instructions*

Defendant asserts the trial court erred in rejecting his requested modification to the consciousness of guilt instruction as it pertains to possession of stolen property. The requested modification would have instructed the jury that it could not use evidence that defendant was riding a stolen bicycle to show his intent in entering the storage room.

#### Background

Defendant asked that the jury be instructed that if it found he possessed a stolen bicycle, this fact could not be used as proof of his intent in entering the storage room. Defendant argued use of the stolen bicycle to prove intent "would basically bootstrap the People's case in order to establish the intent element," lessening the prosecution's burden. Defense counsel requested the court instruct as follows: "Should you find that defendant was in possession of recently stolen property, to wit the bicycle, that possession is only relevant to defendant's knowledge as to the character and nature of the bicycle and not for any other purpose."

The court declined the proffered instruction. The court reasoned: "The defense instruction would suggest that this particular bit of circumstantial evidence . . . that the defendant is in possession of a bike that was stolen from a location that was no more than a quarter mile from the McNeil residence, and that he was in possession within a matter

16

of minutes or hours depending on which way you look at it, the time the bike was taken from the front patio area of the Gonzales residence. The defense instruction would prohibit the jury from making what could be a logical conclusion that the defendant had the intent at the time the bicycle was taken or came into his possession, and he had that same intent at the time he was inside the storage room at the McNeil residence.

"There are two logical analyses that . . . the jury could use. The jury could decide that the defendant is in the storage room before the bike was taken from the Gonzales residence. If the jury made the decision, then we know that no more than ten minutes could have elapsed between the time that the defendant was at the McNeil residence and the time he was at the Gonzales residence. That would mean that the defendant had actually taken the bike at the Gonzales residence, and could certainly conclude that if he intended to commit a theft at approximately 1:30, he had the same intent when he was inside the McNeil storage room at approximately 1:20. Now . . . the jury could conclude that the bike had been taken before the defendant was seen in the storage room, so this could have been a passage of as many as seven hours. That certainly diminishes the logical conclusion that the defendant had the same criminal intent at the time he came into possession of the bike as he had when he was seen inside the storage room. But it would still be a logical inference that the jury could make that he had the same criminal intent at both times.

"Now, having said that, the jury may conclude that neither of those assumptions is warranted based on the evidence in this case. If so, then the jury would not connect the theft of the bicycle and the defendant's presence inside the storage room in any way. But if they do choose to accept one of those conclusions, Instruction 225 still says specifically that [the] People have to prove their case beyond a reasonable doubt, and if there is an innocent interpretation from the circumstantial evidence, then the jury must adopt that innocent interpretation.

17

"So 225 does nothing to lower the People's burden in this particular matter. I don't find any case that would warrant giving this limiting instruction, and I shall not give it."

The court instructed pursuant to CALCRIM No. 225 that "[t]he People must prove not only that the defendant did the acts charged, but also that he acted with a particular intent. The instruction for each crime explains the intent required.

"An intent may be proved by circumstantial evidence.

"Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.

"Also, before you may rely on circumstantial evidence to conclude that the defendant had the required intent, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required intent. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions supports a finding that the defendant did have the required intent and another reasonable conclusion supports a finding that the defendant did not, you must conclude that the required intent was not proved by the circumstantial evidence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

In addition, the court instructed that burglary requires the defendant have the specific intent of "entering a building with the intent to commit theft." The court also instructed with CALCRIM No 376: "If you conclude that the defendant knew he possessed property and you conclude that the property had in fact been recently stolen, you may not convict the defendant of receiving stolen property based on those facts alone. However, if you also find that supporting evidence tends to prove his guilt, then

18

you may conclude that the evidence is sufficient to prove he committed receiving stolen property."

**Discussion**

Defendant renews his contention that the court erred in refusing to instruct that the jury could not use his possession of the stolen bicycle to establish his intent when he entered McNeil's storage room. According to defendant, the issue is "whether a person who is knowing [*sic*] possession of stolen property, can be inferred to have the intent necessary to commit a burglary when entering a structure not connected to the stolen property."

The trial court's instructions on intent allowed the jury to infer intent from circumstantial evidence.

Defendant relies on *People v. Najera* (2008) 43 Cal.4th 1132, arguing a jury must be instructed that possession of stolen property from the structure that is the subject of the charged burglary is not sufficient to establish guilt of the burglary.

In *Najera*, the defendant argued the trial court erred in failing to instruct on its own motion that possession of recently stolen property was insufficient by itself to establish guilt of the charged offenses: unlawful taking of a vehicle and possession of burglary tools. (*Najera*, *supra*, 43 Cal.4th at pp. 1135-1136.) The Supreme Court held that such an instruction is not required to be given sua sponte. The court reasoned: "Because the portion of CALJIC No. 2.15 that defendant claims ought to have been given was merely a specific application of the general instruction governing circumstantial evidence, the omitted instruction was not ' "vital to a proper consideration of the evidence by the jury" ' [citation] . . . . [¶] Where, as here, an instruction simply informs the jury that a fact or cluster of facts is not, without more, substantial evidence of guilt under the ordinary legal rules set forth elsewhere in the instructions, we have not imposed a duty on trial courts to provide such an instruction sua sponte." (*Najera*, at pp. 1138-

19

1139.)  The court concluded such instructions, while helpful, are not vital to the jury's ability to analyze the evidence.  (*Id*. at p. 1139.)

Here, however, defendant requested an instruction that told the jury possession of the stolen bicycle was "only relevant to defendant's knowledge as to the character and nature of the bicycle and not for any other purpose."  Defendant did not request that the court instruct the jury that possession alone could not establish the intent required to find burglary.  Defendant's possession of the stolen bicycle was a piece of circumstantial evidence the jury could consider in determining whether defendant entered McNeil's storage room with the intent to commit burglary.  Defendant's proffered instruction would completely remove the stolen bicycle from the jury's consideration of his intent. The court did not err in refusing to so instruct.

### *Lesser Offense of Trespassing*

Defendant also faults the trial court for not instructing on the crime of trespass, arguing it is a lesser included offense.  At trial, defendant requested the instruction.  The court found that trespassing is not a lesser included offense of burglary and declined to so instruct.

A trial court has a duty, even in the absence of a request, to instruct on general principles of law relevant to the issues raised by the evidence and necessary to the jury's understanding of the case.  Included in this duty is an obligation to instruct on lesser included offenses when the evidence raises a question as to whether the greater, charged crime has been proven and there is substantial evidence that only a lesser included crime was committed.  (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)  However, the existence of any evidence, " 'no matter how weak,' " will not justify instructions on a lesser included offense.  Instead, such instructions are required only if the evidence that defendant is guilty only of the lesser offense is " 'substantial enough to merit consideration' " by the jury.  (*Id.* at p. 162.)  If the trial court fails to instruct on a lesser

20

included offense, we reverse only if, after considering the entire record, we find a reasonable probability that the error affected the outcome of the trial. (*Id.* at p. 165.)

According to defendant, under the accusatory pleading test, trespass in the present case is a lesser included offense of burglary. Defendant contends he "was charged with unlawful entry while a person was present with the intent to commit a theft. The allegation comes within the accusatory pleading test as a lesser included offense of trespassing. It is not possible to commit the burglary in the instant case, without committing an aggravated trespass. The difference is that with the aggravated trespass, there is no intent to commit burglary, just an unlawful entry while a person was present."

Under section 602.5, subdivision (a), "[e]very person . . . who enters or remains in any noncommercial dwelling house . . . without consent of the owner . . . is guilty of a misdemeanor." If the facts alleged in the accusatory pleading include all the elements of trespass so that the burglary could not be committed without also committing the trespass, trespass would be a lesser included offense of burglary. (*People v. Birks* (1998) 19 Cal.4th 108, 117 (*Birks*).)

The information alleged defendant "did willfully and unlawfully enter an inhabited Dwelling with the intent to commit Theft," language which mirrors sections 459 and 460 defining first degree burglary. The information does not state that defendant entered the storage room without consent. In effect, defendant urges us to find that a mere statement of the intent element of burglary automatically makes trespass a lesser included offense of burglary.

However, the Supreme Court has held that trespass is a lesser related offense to burglary, not a lesser included offense. (*People v. Foster* (2010) 50 Cal.4th 1301, 1343-1344.) "It appears well settled that trespass is not a lesser necessarily included offense of burglary, because burglary, the entry of specified places with intent to steal or commit a felony (§ 459), can be perpetrated without committing any form of criminal trespass (see

21

§ 602).” (*Birks*, *supra*, 19 Cal.4th at p. 118, fn. 8.)  Because trespass is not a lesser included offense of burglary, the court had no duty to so instruct.

## Motion for a Mistrial

Defendant contends he was deprived of his constitutional rights when the jury saw him in handcuffs and belly chains in the courthouse hallway.  Accordingly, defendant argues, reversal is required.

### *Background*

During voir dire of prospective jurors, defendant requested a *Marsden* hearing.[2]  During the hearing, defendant stated he was supposed to be appearing before a different judge and that “on three different occasions when I went out to use the restroom, the jury -- all the jury seen [*sic*] me in handcuffs and belly chains on the way in, on the way out, and then back in again.  So that’s grounds for a mistrial.”

After denying the *Marsden* motion, the trial court, with the prosecution present, stated that potential jurors had observed defendant in the hallway in handcuffs and belly chains.  The court noted “that method of transport is virtually always used in this courthouse.  We all know what the shortcomings are in terms of security issues in this case and how it’s virtually impossible to immunize potential jurors from knowledge that a defendant is in custody.”

The court later stated:  “Now, my immediate concern right now is that you expressed concern and anger, and my bailiff was afraid that you might actually physically act out which is why he apparently placed you in handcuffs.  I expect that everyone in this courtroom will conduct themselves with decorum.  I know you did during the last trial.  There were no problems during the last trial.  I expect there will be no problems during this trial.  I’m going to ask my bailiff to take the handcuffs off you, but if there is

---

[2]  *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

22

an outburst, especially in front of the jury, then I'm going to have to take some steps to make sure that that doesn't repeat itself. [¶] . . . [¶] So do I have your commitment that there won't be any problems in front of the jury?" Defendant initially replied that he could not make such a commitment because "my mind is not where it needs to be." After further discussion about defense counsel's representation of him, defendant gave his word and the handcuffs were removed.

The court instructed the jury with CALCRIM No. 204 at the beginning of the trial: "The fact that physical restraints, handcuffs, and things of that nature are applied to anybody in this case, a witness, the defendant, that's not evidence in this case, and no one can use observations or that kind of information in making the important decisions about guilt or innocence in this case." At the close of evidence, the court instructed: "The fact that physical restraints have been placed on the defendant is not evidence. Do not speculate about the reason. You must completely disregard this circumstance in deciding the issues in this case. Do not consider it for any purpose or discuss it during your deliberations."

*Discussion*

Defendant contends the trial court erred in denying his motion for a mistrial after the jury saw him in the courthouse in handcuffs and belly chains. The trial court's admonition, defendant argues, did not cure the harm and his conviction must be reversed.

A defendant may be subjected to physical restraints while in the jury's presence upon a showing of manifest need. Manifest need may be found when the evidence reveals that the defendant has threatened jail deputies, possessed weapons while in custody, threatened or assaulted other inmates, and/or engaged in violent outbursts in court. The court's decision to impose restraints must be based on facts in the record. Moreover, the court must make its own determination and not simply defer to the opinions of officers. We uphold the trial court's decision absent a manifest abuse of

23

discretion. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1031-1032; *People v. Lomax* (2010) 49 Cal.4th 530, 561.)

Physical restraints should be as unobtrusive as possible, but as effective as necessary under the circumstances. Any error in imposing restraints is harmless if there is no evidence the jury was aware of the shackles during trial or that the restraints impaired the defendant's ability to participate in the defense. (*People v. Mar* (2002) 28 Cal.4th 1201, 1217; *People v. Anderson* (2001) 25 Cal.4th 543, 596.)

Defendant contends, "There was simply no reason to have [defendant] shackled other than the convenience of the deputies bringing him into court." However, the court noted both the common practice of bringing defendants into court under restraint and the bailiff's concern that defendant might "physically act out" as reasons for restraining him.

Even if the court's stated reasons do not amount to a manifest need for restraints, we find no abuse of discretion. A brief glimpse of defendant being transported in restraints outside the courtroom does not give rise to prejudicial error. (*People v. Cunningham* (2001) 25 Cal.4th 926, 988-989; *People v. Tuilaepa* (1992) 4 Cal.4th 569, 583-584.) As one Court of Appeal observed: "The customary practice of utilizing physical restraints while transporting a prisoner from place to place, e.g., from jail to courtroom and back, is a matter of common knowledge and generally acknowledged as acceptable for the protection of both the public and defendant." (*People v. Jacobs* (1989) 210 Cal.App.3d 1135, 1141.) Nothing in the record reveals the restraints impaired defendant's ability to participate in his defense; we find no error in the trial court's denial of his mistrial motion.

### Court's Request for Additional Information During Sentencing

Defendant contends the trial court violated his right against self-incrimination when it informed him it would not strike any of his prior convictions unless it understood the circumstances surrounding the present offense. Defendant argues the trial court's disregard for his rights requires remand and resentencing without regard to his testimony.

24

*Background*

After the jury convicted defendant of both counts, the court found true the enhancements alleged for his five prior convictions. The probation report recommended defendant be sentenced to 50 years to life for burglary and receipt of stolen property, plus a determinate term of 30 years for the enhancements.

Defendant, prior to sentencing, brought a motion requesting that the trial court sentence him to a maximum determinate term of 18 years by staying the sentence on the receipt of stolen property count and exercising its discretion to strike a prior conviction. The trial court stated any consideration of the request would require a sentencing hearing. According to the court, "From my perspective, fundamentally, I cannot conceive of striking even one of the defendant's prior serious felony convictions unless the defendant were to testify and talk about how he ended up committing the crimes of which he was convicted in this case."

At the beginning of the sentencing hearing, the trial court told defense counsel: ". . . I don't have sufficient information from your client to determine whether there is any legal basis to grant his motion to strike one of his prior serious felony convictions. Frankly, I would need to hear from him before I had sufficient evidence to make that determination."

After defendant made a successful *Marsden* motion, the trial court informed him: "As I . . . said earlier, I found myself in no position to deal with some of the factual issues raised on Mr. Rodriguez' behalf in his motion to strike one of his strikes unless I heard testimony or was presented with evidence that supplemented the evidence that was presented at trial, and so that's what we've set aside the time for today." Defendant stated he did not know of anyone who would testify in his behalf.

The court told defendant: "Let me make this very clear to you. Mr. Rodriguez, unless I understand what happened the night you were arrested by the Davis Police Department, my only recourse is to impose the sentence mandated by law. I mean, the

big hole in this case is what do you have to say about what happened that night. All I know is what I heard from Mrs. McNeil and what I heard from the police officers in the case. So I know what she saw, I know what the police officers saw and what they did, but I don't know anything from your prospective [*sic*].

"So it is up to you whether you want to take the stand. If you take the stand you are subject to cross-examination by Mr. Johnson, but from my prospective [*sic*] I don't know that there is anything unless you have another witness who was there that night, who is here today to testify. I don't know that there is anything else you can do aside from taking the stand yourself.

"You don't have to do that. I'm just telling you the position I find myself in without some additional information."

Defendant then called his wife as a witness. Mrs. Rodriguez testified that defendant left the house with his son in defendant's truck the night of the arrest. She did not see the truck again until the next day, when defendant's son returned it. Two months prior to the incident, defendant told his wife he was struggling with heroin addiction. Defendant was a good husband and a good provider. He had become more remorseful since his incarceration.

Defendant's pastor also testified. He stated defendant was involved in the church and led a men's transitional program, helping others to get out of drugs, gangs, and alcohol.

Defendant told the court he would like to write down his concerns. The court responded that it would not consider any information as evidence unless it was subject to cross-examination. Defendant would have to take the stand so the prosecution could ask questions; otherwise, it could not be considered evidence. The court asked defendant if he was going to take the stand and testify under oath.

Defendant testified. He stated the night of the incident he and his son took heroin and methadone and went to Davis to steal bikes. As they approached a house to steal

26

bikes, someone came out and they ran away in different directions. His son hid in a storage closet. They noticed car lights and thought it might be the police. Defendant was under duress and disoriented; he did not know what he was doing. He "snagged" the bike, the one the police recovered, but he was not going to keep it. Defendant was just trying to "get out of there." If he had not been using drugs, defendant would never have done something like that. His wife was unaware of the drug use.

During questioning by the prosecution, defendant denied he was blaming his son for the incident. Defendant stated he was not the one in the storage closet. Defendant ran away from the residence, got lost, and took the bike to find his way back.

The trial court during sentencing stated, "we know that on May 1st, by your own admission, you were once again using drugs and you were once again stealing from people.

"The thefts that occurred on May 1st were not simply crimes of opportunity. You were living in Sacramento at the time. You had to make the decision to drive to Davis, and you did that with the intent that you were going to steal bicycles in Davis. So clearly the drug use behavior and the theft behavior that really characterized your entire criminal history had manifested itself once again."

The court sentenced defendant to 25 years to life for burglary and a concurrent term of 25 years to life for receipt of stolen property, 10 years for the serious felony enhancements, and 3 years for the prior prison term enhancements, for a total of 38 years to life in prison. The court stayed the terms for two of the prior prison term enhancements. The probation report recommended 50 years to life for the burglary and the receipt of stolen property, plus a determinate term of 30 years to life for the enhancements. In sentencing defendant, the court stated it imposed a concurrent sentence on the receipt of stolen property after defendant testified he stole the bicycle to escape after the burglary: "For that reason, I would find that the theft of the bicycle is a crime

27

that occurred on the same occasion, and, therefore, concurrent sentencing can be imposed for the possession of the stolen bicycle."

***Discussion***

Defendant claims the trial court abridged his right against self-incrimination and due process when the court informed defendant he would not consider striking a prior unless defendant took the stand, under oath, and testified as to what happened on the night in question. According to defendant, "[t]he trial court unabashedly insisted that [he] waive his right to [*sic*] self-incrimination before it would exercise its discretion as to the pending motion to strike."

The right to testify and the right against self-incrimination are fundamental constitutional rights. (*People v. Cuccia* (2002) 97 Cal.App.4th 785, 791 (*Cuccia*).) In addition, a trial court may not draw an adverse inference from a defendant's invocation of his right to remain silent during sentencing. In *Mitchell v. United States* (1999) 526 U.S. 314 [143 L.Ed.2d 424], the United States Supreme Court underscored a defendant's right to remain silent during sentencing and prohibited the court from using a defendant's failure to admit guilt as a factor in determining the penalty. In *Mitchell*, the defendant pleaded guilty to one count of conspiring to distribute five or more kilograms of cocaine and to three counts of distributing cocaine within 1,000 feet of a school. (*Id*. at p. 317.) At sentencing, the trial court told the defendant it was drawing an adverse inference from her silence: " ' "I held it against you that you didn't come forward today and tell me that you really only did this a couple of times . . . . I'm taking the position that you should come forward and explain your side of this issue." ' " (*Id.* at p. 319.) The Supreme Court held it was error for the sentencing court to draw adverse inferences from the defendant's silence and that the court had "imposed an impermissible burden on the exercise of the constitutional right against compelled self-incrimination." (*Id*. at p. 330.)

Here, the court told defendant it was not inclined to exercise its discretion to strike one of the priors based on the evidence introduced at trial. To exercise that discretion,

28

the court needed more information about what happened on the night in question. The court told defendant it was up to him whether to take the stand and asked defendant if he had any other witness who was there that night. The court reiterated that defendant did not have to take the stand.

In any event, defendant did not suffer prejudice assuming the court erred in offering him an opportunity to explain his actions the night of the burglary. We review the denial of the right against self-incrimination under the harmless beyond a reasonable doubt standard. (*Cuccia*, *supra*, 97 Cal.App.4th at p. 791.) Prior to defendant's testimony, the court stated it was not inclined to exercise its discretion to strike any of defendant's strikes. Defendant's testimony did not result in any prejudice.

## Failure to Strike Prior Strikes

Defendant argues the trial court abused its discretion in declining to strike one or both of defendant's prior strike allegations. He contends the trial court considered impermissible factors in declining to strike the priors.

### *Background*

In 1984 defendant was sentenced to two years in state prison for first degree burglary. In 1996 defendant was sentenced to four years in prison for first degree burglary. His other priors were second degree burglary convictions in 1986 and 1991, and two drug charge convictions in May 2000 and April 2004. Defendant also violated parole on numerous occasions.

The trial court provided a lengthy explanation for its sentencing decision: "So let's get to the heart of your request, that is the suggestion that I should strike at least one of your prior serious felony convictions, that is one of your first degree burglaries.

"I'll accept your representation that each of the first degree burglaries that you suffered prior to the May 1st, 2011, Davis burglary was a daytime residential burglary. . . . I don't know anything about the facts, but I'll accept that as being the case. They are, nonetheless, serious felony convictions.

29

"What I do know with certainty is that after you were convicted of the first residential burglary, that is back in 1984 when you were 23 years old, you spent about 16 months at CDC, and then you were paroled. You remained on parole for six years, and during that time, there was [*sic*] eight separate parole violations, including your arrest in 2005 for a second degree burglary. So back in the '80s into the '90s, lengthy incarceration didn't change your criminal behavior.

"Then you were arrested in 1996 for the second of the residential burglaries. You were sentenced to four years in state prison for that residential burglary. You were 35 years old at the time that burglary was committed. You were paroled sometime in the late '90s, and you suffered a parole violation for that first degree burglary.

"Since you were released from custody for the second first degree burglary, you suffered felony drug convictions in 2000, and in 2004 you were committed to state prison for each of those convictions. The 2000 conviction kept you in prison for less than two years. You were paroled, and there were two parole violations at that time.

"Then you were incarcerated in 2004 for possession for sale charge. The sentence was four years in prison. I assume you served about two years. . . . There were no parole violations for that period of parole, but you did pick up the DUI that I mentioned during that period of time. So you were convicted in 2006 of the DUI."

The court also acknowledged that defendant had become a more law abiding citizen from late 2005 until his arrest in May 2011. In addition, the court stated witnesses had testified as to defendant's positive actions, both in the community and in his church: "By the spring of 2011, I think that anyone who knew you would no doubt have said you were a different person than the guy who had been incarcerated on seven separate occasions in state prison, but given what happened on May 1st, they would have been wrong. Because we know that on May 1st, by your own admission, you were once again using drugs and you were once again stealing from people.

30

"The thefts that occurred on May 1st were not simply crimes of opportunity. You were living in Sacramento at the time. You had to make the decision to drive to Davis, and you did that with the intent that you were going to steal bicycles in Davis. So clearly the drug use behavior and the theft behavior that really characterized your entire criminal history had manifested itself once again."

The court discussed the policy reasons and public support for the original three strikes legislation and found defendant's residential burglaries would have qualified as serious felonies supporting lengthy incarceration. The court also noted the upcoming referendum to modify the three strikes law and stated: "even if it does pass, my reading of the proposal would not affect your situation, because this time you've been convicted of what is defined as a violent felony under the law because Ms. McNeil and her kids were in the house at the time that the burglary occurred. So even if the Three Strikes Law is modified next Tuesday, that would not change your situation, and I don't believe that any of the advocates of that change in the law would say somebody like Richard Rodriguez shouldn't be incarcerated for a lengthy period of time. They would still say the Three Strikes Law was intended to deal with ongoing criminal behavior that lasts for years and years.

"You're 51 years old. You were 50 years old at the time that the 2011 burglary was committed. I'm confident that voters would say if they were given this probation report that they intended that someone who has a criminal record like you do, someone who continues to commit theft and drug offenses from the time they were in their 20s to the time that they were 50 years old should be incarcerated under the Three Strikes Law.

"So I would deny your request to strike at least one of the strikes in this case."

*Discussion*

Defendant argues the court utilized impermissible factors in declining to dismiss any of his strike priors. Specifically, defendant contends the court abused its discretion in

31

requiring he testify at sentencing, focusing solely on his criminal history and overlooking considerable mitigating factors.

Section 1385 grants the trial court the authority to strike or vacate a prior strike for purposes of sentencing under the three strikes law, a decision we review for an abuse of discretion. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504.) In determining whether to strike or vacate a prior strike conviction in furtherance of justice under section 1385, the trial court must consider " 'whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).)

The burden is on the party challenging the sentence to show the sentence was irrational or arbitrary. In the face of a failure to make such a showing, we presume the trial court acted to achieve legitimate sentencing objectives and the court's determination will not be set aside. Nor will the trial court's decision be reversed because reasonable people might disagree. (*Carmony*, *supra*, 33 Cal.4th at pp. 376-377.) Accordingly, we review the trial court's sentencing decision to determine if it is so irrational and arbitrary that no reasonable person could agree with it. (*Id*. at p. 377.)

**Nature and Circumstances of Present Conviction**

Defendant contends the current offense was relatively minor and involved no violence. However, prior to entering McNeil's carport, defendant took heroin and methadone with his son. The pair drove to Davis to steal bikes. In the middle of the night, while McNeil and her children were home, he entered the carport. As the trial court noted, "[T]he drug use behavior and the theft behavior that really characterized your entire criminal history had manifested itself once again."

32

**Previous Serious and/or Violent Felony Convictions**

Defendant argues none of his prior crimes appear to have involved the use of any weapon or violence. Defendant's previous convictions included four burglary convictions, a receipt of stolen property conviction, and two felony drug offense convictions. The burglaries took place in the 1980's and 1990's. However, except for the period from 2006 through 2009, defendant never remained out of custody for more than a couple of years without committing a new offense or violating parole.

**Background, Character, and Prospects for Rehabilitation**

Defendant points out he presented evidence of family and community support, and prospects to become a productive member of society upon his release. He describes his current charges as a relapse, noting he had been active in helping others overcome addiction. Defendant's pastor and wife also offered positive testimony regarding defendant's character.

In defendant's declaration in support of his motion to strike a prior, defendant stated that after his release from prison in 2006, he was employed as a forklift operator and warehouseman. "In short order," defendant lost his job after he was arrested for drunk driving and violated his parole. Since 2008 defendant has worked as a truck driver and assisted his wife in her cleaning business. After the parole violation, defendant ended up in a transitional house where his "job duties entailed waking the men for prayer, bible study, taking them out for activities, giving them and making sure they take their medication, taking them to court, and assisting them in finding employment."

Defendant contends the trial court abused its discretion in requiring him to testify. Defendant also argues the trial court relied on a "divination of how the electorate would like him to rule on the invitation to strike a prior," failing to exercise its own independent discretion.

During sentencing, the trial court stated that those who voted for the three strikes law would have felt a defendant "with a record like this, should be incarcerated for a

lengthy period of time." In addition, the court commented that the amendments currently pending would not change defendant's sentence, and no "advocates of that change in the law would say somebody like Richard Rodriguez shouldn't be incarcerated for a lengthy period of time. They would still say the Three Strikes Law was intended to deal with ongoing criminal behavior that lasts for years and years." The court continued that it was "confident that voters would say if they were given this probation report that they intended that someone who has a criminal record like you do, someone who continues to commit theft and drug offenses from the time they were in their 20s to the time that they were 50 years old should be incarcerated under the Three Strikes Law."

We do not find the court's comments regarding the electorate's feelings about the three strikes law amount to an abuse of discretion. The purpose of the three strikes law is relevant to a court's exercise of its section 1385 discretion but should not predominate in the court's exercise of that discretion. (*People v. Garcia* (1999) 20 Cal.4th 490, 501-502.) The court's comments were but one aspect of its review of defendant's case. They neither predominated nor overshadowed the other considerations: defendant's previous record, the crimes at issue in the present case, and defendant's background and prospects for rehabilitation.

Defendant also faults the trial court for failing to consider mitigating factors in exercising its discretion under section 1385. We disagree. The trial court acknowledged that defendant had "become a more law abiding citizen" and had done "some very positive things with your community and with your church." Despite these positive factors, the trial court found the burglary and possession of stolen property convictions revealed defendant's inability to change. According to the court, "the drug use behavior and the theft behavior that really characterized your entire criminal history had manifested itself once again."

34

Given the record before us, we cannot find the trial court's decision not to strike any of defendant's priors was so irrational or arbitrary that no reasonable person could agree with it. (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

## Ineffective Assistance of Counsel

Defendant brought a motion for a new trial based on ineffective assistance of counsel. He argues the court erred in denying the motion because prior to trial he told defense counsel someone else was with him the night of the burglary.

### *Background*

Following trial, defendant, proceeding in propria persona, made a motion for a new trial on several grounds, including newly discovered evidence and ineffective assistance of counsel. Defendant stated that prior to trial, he told defense counsel that another person was with him the night of the burglary. The other person was in the storage room and was seen by the homeowner. Defense counsel responded: " 'Oh that[']s not going to fly - all your [*sic*] going to do is piss off the judge.' " Distrustful of his attorney, defendant did not reveal the other person's identity.

The trial court denied the motion. The court stated that during the *Marsden* hearing, defendant testified he had not told his attorney that the other person was his son: "That is important because evidence that was not presented at trial does not warrant a new trial unless the defendant was unaware of that information at the time of the first trial and could not have been aware of that with diligent investigation. Clearly, that's not the situation that we have here. The defendant knew exactly who was with him at the time, but the defendant made a decision which may well have been his undoing, but it was a decision that he intentionally made not to share this information with his attorney. So I do not find there's a basis for granting a new trial on that ground." The court also found defense counsel did a "very professional job with the information that was available to him" and that counsel's strategic decisions were logical.

35

*Discussion*

Defendant argues the trial court erred in denying his motion for a new trial based on ineffective assistance of counsel. He asserts counsel was ineffective in failing to adequately address the issue of a third party at the scene who fit McNeil's description and in not opposing McNeil's identification testimony based on an unduly suggestive showup procedure.

To establish ineffective assistance of counsel, a defendant must show counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms, and that the deficient performance prejudiced the defendant. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.) We accord trial counsel's tactical decisions substantial deference and do not second-guess counsel's reasonable tactical decisions. (*People v. Maldonado* (2009) 172 Cal.App.4th 89, 97.)

Defendant, in his motion for a new trial, stated he told defense counsel that there was another person with him the night of the burglary. However, he did not trust counsel so he "did not follow up" on it until after trial. Given defendant's reluctance to confide in counsel that defendant's son accompanied him on the night of the crimes, we cannot find defense counsel performed ineffectively in failing to follow up on defendant's comments. Moreover, McNeil identified defendant as the person she saw leaving the carport the night of the burglary; introduction of evidence of a third party does nothing to undercut her identification of defendant both the night of the incident and at trial.

In addition, defendant contends the single-person showup the night of his arrest was suggestive, and defense counsel performed ineffectively in failing to object to McNeil's identification of him both that night and at trial. Defendant acknowledges that defense counsel recognized the suggestiveness of the showup procedure, cross-examining each witness about the showup and arguing extensively that eyewitness testimony under such circumstances is unreliable. However, defendant argues cross-examination and

36

argument are an ineffective strategy in the absence of expert witness testimony about the fallibility of eyewitness memory.

A single person showup should not be used without a compelling reason because of the danger of suggestion "from 'a one-to-one viewing [which] requires only the assent of the witness' [citation]." (*People v. Sandoval* (1977) 70 Cal.App.3d 73, 85.) Here, McNeil testified that on the night of the burglary, an officer told her they had detained a person who fit her 911 call description. The officer wanted McNeil "to have a look to see if it exactly was the person who I saw." Prior to the identification, the officer read an admonition used for field identifications, cautioning McNeil not to conclude that the person she was about to see was the burglar just because he was in handcuffs or in the back of a police car. McNeil testified she recognized defendant even from a distance, and the officer brought her closer to confirm the identification. The identification took place about 30 minutes after the burglary.

Given the admonition to McNeil, any motion to suppress her pretrial identification would have been futile. Instead, defense counsel made the tactical decision to challenge the accuracy of her identification though cross-examination and argument. We find counsel did not perform ineffectively.

**Prosecutorial Misconduct**

According to defendant, during closing argument the prosecutor violated the prohibition against commenting on a defendant's failure to testify. The prosecutor pointed out that there was no evidence anyone had loaned defendant the stolen bicycle.

*Background*

During closing argument, the prosecution made the following comments: "And so I point you back to the whole burden of proof. Reasonable. Is that reasonable that that bike changed hands that many times in that short a time period, whether it was a few hours or a few minutes? No, it's not reasonable. And if someone had lent it to him, you can be sure that we would have heard about it.

"That's not saying the defendant has to prove anything.  They don't.  And [defense counsel] was absolutely correct.  They could sit there and not say one word while I put my case on, and if I fail to prove it to you, he doesn't have to do a thing.  But I can certainly point out to you that if it were as simple as someone had lent it to him and not told him that it had been stolen, you can bet we would have heard that."

*Discussion*

Defendant contends he would have been the most obvious person to testify that the bicycle he was riding on had been loaned to him and that he did not know that it had been stolen.  Therefore, the prosecution violated the constitutional prohibition against commenting on a defendant's failure to testify.

The prosecution enjoys wide latitude to comment on the evidence presented at trial and to draw inferences from such evidence.  (*People v. Dennis* (1998) 17 Cal.4th 468, 522.)  "We apply a 'reasonable likelihood' standard for reviewing prosecutorial remarks, inquiring whether there is a reasonable likelihood that the jurors misconstrued or misapplied the words in question."  (*People v. Roybal* (1998) 19 Cal.4th 481, 514.)

The Fifth Amendment to the United States Constitution prohibits a prosecutor from commenting, directly or indirectly, on a defendant's decision not to testify in his or her own behalf.  (*Griffin v. California* (1965) 380 U.S. 609, 613 [14 L.Ed.2d 106] (*Griffin*).)  However, an indirect or brief reference to a defendant's failure to testify, without any suggestion that the jury should infer guilt from the defendant's silence, constitutes harmless error.  (*People v. Boyette* (2002) 29 Cal.4th 381, 455-456.)

 In *People v. Johnson* (1992) 3 Cal.4th 1183, the Supreme Court noted:  "It is true, as defendant asserts, that a prosecutor errs by referring to evidence as 'uncontradicted' when the defendant, who elects not to testify, is the only person who could have refuted it. [Citation.]  If, however, the evidence could have been contradicted by witnesses other than the defendant, the prosecutor may without violating defendant's privilege against self-incrimination describe the evidence as 'unrefuted' or 'uncontradicted.'  [Citations.]"

(*Id*. at p. 1229.)  In *People v. Lancaster* (2007) 41 Cal.4th 50, 84, the prosecution during closing argument commented that the defense had offered no explanation for a bottle found at the murder scene that contained the defendant's fingerprints.  The Supreme Court found no *Griffin* error:  "[T]he prosecutor's statement was a fair comment on the state of the evidence, rather than a comment on defendant's failure to personally provide an alternative explanation."  (*Ibid*.)  Numerous courts have also found a comment on the evidence that does not impugn the defendant's failure to testify does not amount to *Griffin* error.  (*People v. Taylor* (2010) 48 Cal.4th 574, 633; *People v. Mitcham* (1992) 1 Cal.4th 1027, 1051; *People v. Hughes* (2002) 27 Cal.4th 287, 372-375.)

Here, the person who gave defendant the bicycle could have provided the testimony the prosecutor referred to in closing argument.  Defendant was not the only possible source of that information.  Although defendant argues he "would have been the most obvious person to testify that the bicycle he was riding on had been loaned to him," he was not the only person who could so testify.  Accordingly, we find no *Griffin* error.

### Receiving Stolen Property Count

Finally, defendant argues we should strike the concurrent term of 25 years to life imposed for receiving stolen property, since he is entitled to benefits under amendments to the three strikes law.  The amendments were passed five days after the court sentenced defendant.

### *Background*

On November 6, 2012, the voters passed Proposition 36, which enacted the Three Strikes Reform Act of 2012 (Act), effective November 7, 2012.  The Act amended sections 667 and 1170.12 to lessen the sentences that may be imposed in cases involving nonviolent, nonserious felonies committed after two prior strikes.  (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) text of Prop. 36, proposed law, §§ 2, 4, pp. 105-109 (Guide).)  In addition, the Act added section 1170.126, providing a distinct resentencing option "to persons presently serving an indeterminate term of imprisonment pursuant to"

39

the three strikes law. (§ 1170.126, subd. (a); see Guide, *supra*, § 6, pp. 109-110.) Section 1170.126 gives the trial court discretion not to resentence a person who "would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) Under amended sections 667 and 1170.12, the court enjoys no such discretion. (§§ 667, subd. (e), 1170.12, subd. (c).)

*Discussion*

Defendant argues sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C) apply to him because his third-strike sentence is not yet final on appeal and require remanding his case to the trial court for resentencing. Central to his argument is the case of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). In *Estrada* the Supreme Court held that "where the amendatory statute mitigates punishment and there is no saving clause . . . the amendment will operate retroactively so that the lighter punishment is imposed" in all cases in which the judgment was not yet final when the amendment took effect. (*Id*. at p. 748.)

Section 1170.12 does not have an express saving clause. But even in the absence of an express saving clause, the rule in *Estrada* does not apply if the Legislature by other language "clearly signals its intent to make the amendment prospective . . . ." (*People v. Nasalga* (1996) 12 Cal.4th 784, 793.) " '[W]hat is required is that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.' [Citation.]" (*Ibid*.)

Statutes enacted into law through the initiative process are construed in the same manner, and are subject to the same principles, as statutes enacted by the Legislature. (*People v. Elliot* (2005) 37 Cal.4th 453, 478.) One of the most important principles is that statutes dealing with the same subject matter–commonly referred to as statutes "in pari materia"–should be construed together. (*People v. Honig* (1996) 48 Cal.App.4th 289, 327.) Application of this rule is especially appropriate in cases where statutes relating to the same subject matter were passed at the same time. (*Stickel v. Harris*

(1987) 196 Cal.App.3d 575, 590.)  Section 1170.126, a related statute added by Proposition 36, defeats the presumption of retroactivity set forth in *Estrada.*  It authorizes limited application to prisoners serving three strikes sentences when the measure was enacted and establishes a specific procedure for defendant to follow in this case.

In particular, section 1170.126 provides for the resentencing of "persons presently serving an intermediate term of imprisonment pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, whose sentence under this act would not have been an indeterminate life sentence." (§ 1170.126, subd. (a).)  A person serving a three strikes sentence for a current conviction that is not a serious or violent felony "may file a petition for a recall of sentence, within two years after the effective date of the act that added this section or at a later date upon a showing of good cause, before the trial court that entered the judgment of conviction in his or her case, to request resentencing in accordance with" Proposition 36.  (§ 1170.126, subd. (b).)  An inmate is eligible for resentencing unless he has prior convictions for certain specified offenses.  (§ 1170.126, subd. (e).)  If the prisoner is eligible, then the trial court will resentence the defendant "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."  (§ 1170.126, subd. (f).)  The factors governing the trial court's exercise of its discretion–the prisoner's criminal history, record in prison, and any other relevant evidence–are set forth in section 1170.126, subdivision (g).

In light of this scheme, which provides for limited application of Proposition 36 to prisoners serving three strikes sentences at the time of its enactment, the presumption in *Estrada* does not apply as to them; it applies only to those people not yet convicted or not yet sentenced.  Those already sentenced and serving an indeterminate term of imprisonment must petition the trial court for recall of sentence regardless of whether or not their judgment is final.  Nothing in Penal Code section 1170.126 states that its reference to "persons presently serving an indeterminate term of imprisonment . . . whose

41

sentence under this act would not have been an indeterminate life sentence" is meant to apply only to those serving a term of imprisonment under a final judgment. (Pen. Code, § 1170.126, subd. (a).) We may not insert such words into the statute. (Code Civ. Proc., § 1858; *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826-827.)

Our conclusion that sections 667, subdivision (e)(2) and 1170.12, subdivision (c)(2) do not apply retroactively is supported by *People v. Yearwood* (2013) 213 Cal.App.4th 161 (*Yearwood*). *Yearwood* buttressed its conclusion by referencing the voters' intent in approving the Act and by ballot arguments. According to *Yearwood*, enhancing public safety was a key purpose of the Act. A prospective-only application of the Act supports the Act's public safety purpose by reducing the likelihood that prisoners who are currently dangerous will be released from prison due to the Act. If the Act were given retroactive application, prisoners in defendant's position would be entitled to automatic resentencing without any judicial review to ensure they do not currently pose an unreasonable risk of danger to public safety. The time period between sentencing and judgment can span years, and prisoners can increase in dangerousness during this interval. Such a "loophole," the court reasoned, would be inconsistent with the public safety purpose of the Act. (*Yearwood*, *supra*, at p. 176.)

*Yearwood* also rejected the argument that failing to apply the mandatory ameliorative benefits of Proposition 36 retroactively would violate the equal protection clause of the federal Constitution, noting that the rational relationship test is the appropriate test and concluding: "Prospective application of amended sections 667 and 1170.12 furthers legitimate interests and does not unfairly discriminate against [defendant]. A prisoner who was sentenced to an indeterminate life term before the Act's effective date may file a section 1170.126 petition upon finality of the judgment. If qualified, the prisoner will ordinarily receive the same sentencing reduction that would have been obtained if he or she had been resentenced under amended sections 667 and 1170.12. The discretionary public safety exception to second strike sentencing that is

42

present in section 1170.126, but not in amended sections 667 and 1170.12, is rationally related to a legitimate state interest.  It increases the likelihood that prisoners whose sentences are reduced or who are released due to the Act will not pose an unreasonable risk of danger to the public."  (*Yearwood*, *supra,* 213 Cal.App.4th at pp. 178-179.)  We agree with *Yearwood* and for that reason reject defendant's argument to the same effect.

## DISPOSITION

The judgment is affirmed.


        RAYE        , P. J.


We concur:


        HULL        , J.


        MAURO        , J.